IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Joyce M. Kirk, | ) | |
| | ) | |
| Plaintiff, | ) | C/A No. 2:04-1579-18 |
| | ) | |
| vs. | ) | |
| | ) | **ORDER and OPINION** |
| Colleton County Emergency Medical | ) | |
| Services, and Kenneth Herndon, in his | ) | |
| individual capacity and official capacity | ) | |
| as Colleton County Emergency Medical | ) | |
| Services Director, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

I.    **BACKGROUND**[1]

This case arises out of various incidents that occurred during plaintiff's

employment with Colleton County Emergency Medical Services.  Plaintiff Joyce Kirk

filed this action in state court on April 21, 2004, alleging violations of 42 U.S.C.

§§ 2000e to -e17 (West 1994 & Supp. 2003) ("Title VII"), intentional infliction of

emotional distress, battery, invasion of privacy, negligent supervision, and breach of

contract against defendant Colleton County Emergency Medical Services and Kenneth R.

Herndon ("Herndon"), both individually and in his official capacity as Director of the

Colleton County Emergency Medical Services.  The action was subsequently removed to

federal district court.  On August 30, 2004 Magistrate Judge Carr issued a Report and

Recommendation dismissing the state law tort and contract causes of action as against the

County.  Subsequently, Herndon filed a motion to dismiss and/or for summary judgment.

---

[1] The following is based on the record before the court with all factual inferences
drawn in favor of plaintiff, the non-moving party.

The parties then agreed to dismiss Herndon and all state law claims, leaving only the Title VII action against the County EMS.  Defendant Colleton County EMS now seeks summary judgment on that sole remaining cause of action.

Plaintiff was hired in 1997 as an emergency medical technician.  Prior to 2000, Herndon served as a paramedic for defendant.  Effective January 2000, Herndon was appointed Director of the Colleton County Emergency Medical Services, and as such supervised plaintiff.  Plaintiff alleges that from 1997 until 2002, Herndon made sexual advances towards her in the workplace, initiated unwanted physical contact, and acted in a sexually harassing manner.  Herndon was terminated on February 11, 2002.  Plaintiff's Title VII claim alleges sexual harassment and failure to promote.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when, after considering the full evidentiary record, there are no genuine issues of material fact.  Fed. R. Civ. P. 56(c).  When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, the burden for summary judgment may be discharged by "pointing out to the court that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Evidence should be viewed in the light most favorable to the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, a "mere scintilla" of evidence will not preclude summary judgment. The court's inquiry is "not whether there is literally no evidence, but whether there is any [evidence] upon which a jury could properly . . . find a verdict for the party" resisting summary judgment.  Id. at 251.

### III.    ANALYSIS

**a.    Charge of Discrimination**

Defendant argues that plaintiff's claims should be dismissed because she failed to file a Charge of discrimination within the applicable time period.  A Charge of discrimination must be filed with the EEOC within 300 days after the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1).[2]  Plaintiff's charge was filed on February 24, 2003 - well over 300 days after Herndon was fired (February 11, 2002).  Plaintiff admits that Herndon did nothing objectionable after he was fired; therefore, the EEOC Charge was filed more than 300 days after the last alleged unlawful employment practice.  Nonetheless, plaintiff contends that her EEOC "initial intake questionnaire" should be considered as a Charge of discrimination.  The questionnaire itself is not dated, although it is accompanied by an affidavit which is signed by a notary public and states that the questionnaire and affidavit were executed on September 6, 2002.  The questionnaire explicitly notes "completion of this form does not constitute the filing of a charge."  However, the Fourth Circuit allows an affidavit to constitute a Charge for purposes of the 300 day time limit if it contains the requisite information about the accusation. Waiters v. Bosch Corp., 683 F.2d 89, 92 (4th Cir. 1982) (finding that affidavit filed within 300 day period and containing information required by EEOC regulations may constitute a Charge of discrimination) (cited in Wilkerson v. Grinnell Corp., 270 F.3d 1314 (11th Cir. 2001) (noting Fourth Circuit still follows Waiters)).

---

[2] When the grievance is not initially instituted with a state employment agency, the time limit is 180 days.  Both sides agree that the 300 day limitation applies in this case.

A charge must include general information regarding the alleged unlawful practices, as specified in 29 C.F.R. § 1601.12(a). "Notwithstanding the provisions" of § 1601.12(a), a Charge is adequate if it is "sufficiently precise to identify the parties and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). Plaintiff's affidavit incorporates by reference the questionnaire[3]; the questionnaire meets the requirements of § 1601.12 (b).

Three hundred days prior to the date of the questionnaire was November 10, 2001. Therefore, plaintiff's claim can stand if she alleges incidents of harassment which occurred after that date.

### i.    Affidavit Allegations

Plaintiff's post-discovery affidavit contends Herndon asked her personal questions about her sex life and propositioned her, beginning in 2001 and occurring on a weekly basis until Herndon was terminated in February 2002. Defendant urges the court to disregard the document on the basis it is insufficiently vague, conclusory and a sham affidavit.

Plaintiff's May 17, 2005 affidavit contends

In 2001 Ricky Herndon began to order me into his office. When I went to his office Herndon would often wear his sunglasses and burn incense. Herndon would turn the lights out, light the room with candles and close the door. I was extremely uncomfortable with this situation. Herndon would ask me personal questions about my family, friends and sex life. He would tell me that he wanted to sleep with me, that I was a beautiful woman and that he was in love with me. These meetings were very upsetting to me. They occurred on almost a weekly basis up until Herndon was suspended in February of 2002.

---

[3] The September 6, 2002 affidavit "is intended to verify, under oath, the complaints of discriminatory practices set forth" in the questionnaire.

Kirk Aff. ¶ 2.  The affidavit also describes a December 17, 2001 incident in which Herndon allegedly threatened to divulge a recording of a conversation relating to plaintiff's personal life if she complained to the county administrator about Herndon. Defendant contends these allegations are not sufficiently definite to establish that actionable conduct occurred during the 300 day period.  Unlike many of the cases cited by defendant,[4] plaintiff's affidavit contains dates and specific factual details.  It does not simply assert a continuing violation or allege sexual harassment without elaboration.  As such, the affidavit is not insufficiently conclusory.

Defendant also contends plaintiff's affidavit contradicts her previous deposition testimony and therefore should be disregarded as a sham affidavit.  An affidavit may be disregarded as a sham "when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact . . . and that party attempts thereafter to create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."  Tippens v. Celotex Corp., 805 F.2d 949, 954 (11th Cir. 1986).  The pertinent issue of fact is whether actionable conduct occurred after November 10, 2001 (300 days prior to September 9, 2002).  As defendant notes, plaintiff's affidavit suggests that the objectionable conduct was more frequent than her deposition testimony revealed.  However, none of the incongruities are so clear cut as

---

[4] See, e.g., Woodward v. Lehman, 717 F.2d 909, 915 (4th Cir. 1983) (dismissing claim because of plaintiffs' failure to specify details of discriminatory action during the relevant time period); Patterson v. General Motors Corp., 631 F.2d 476, 483 (7th Cir. 1980) (noting plaintiff's failure to cite facts sufficient to support a continuing violation).

to label the affidavit a sham.[5]  However unlikely, the affidavit does not necessarily

contradict the deposition.  Rather, the inconsistencies are relevant to the witness's

credibility and the weight of the evidence.  Such issues are suited for the trier of fact.  See

Tippens, 805 F.2d at 954.

Defendant also contends that plaintiff's affidavit is inconsistent with notes she

made while the alleged conduct was happening.  These notes were not under oath, were

without assistance of counsel, were not prompted by questions and are possibly

incomplete.  Any dissonance between the notes and affidavit effects plaintiff's credibility

and are for the trier of fact's consideration.

Plaintiff's recollection of the December 17, 2001 incident in her notes and

affidavit are consistent, yet vary with her deposition description.  Since the notes support

the affidavit, the latter cannot be disregarded.  Rather, the trier of fact should consider

any differences in the details.

For these reasons, plaintiff has presented competent evidence of unlawful conduct

within the 300 days prior to the date of the questionnaire.

---

[5] The deposition's questions and answers are not so definite as to preclude the
affidavit's recollection.  For example, the affidavit alleges weekly inquires into plaintiff's
sex life.  The deposition discusses two or three specific instances where Herndon asked
about plaintiff's sex life, but does not conclusively state the total number of times it
occurred. Kirk Dep. at 156. The affidavit also suggests weekly sexual propositions.
Plaintiff's deposition recalls only one direct sexual proposition, but that Herndon
indirectly "referenced it often."  Kirk Dep. at 259.  The deposition suggests Herndon
professed his love for plaintiff "often," with the last time prior to December 17, 2001.
The affidavit alleges Herndon professed his love weekly, until February 2002.  The
deposition notes that plaintiff did not feel the last expression of love conveyed a sense of
lust; the affidavit suggests the contrary but refers to a series of meetings.  These
differences will certainly be noteworthy to the jury, but are insufficient to preclude
consideration of the affidavit.

## ii.     Continuing Violation

Plaintiff also contends that acts prior to November 10 may be considered under the "continuous violation" theory:

> A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.' The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside of the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002). Plaintiff alleges Herndon engaged in repeated behavior which fostered a hostile work environment.[6] If true, Herndon's pre-November 10 actions may constitute a "series of separate but related acts" of harassment that began in 1997 and continued into February 2002. Beall v. Abbot Laboratories, 130 F.3d 614, 621 (4th Cir. 1997). These incidents - all at the hands of the same person - are related as separate events which may "collectively constitute" a sexually hostile work environment. Morgan, 536 U.S. at 117; see also Felton v. Polles, 315 F.3d 470, 485 (5th Cir. 2002) (requiring the "same type of discriminatory acts to occur both inside and outside the limitations period, such that a valid connection exists between them"). Since plaintiff has alleged incidents after November 10 which

---

[6] For example, plaintiff alleges that Herndon, while intoxicated, called her at home three times prior to 1998, once offering her $30,000 to run away with him to Mexico, Kirk Dep. at 53; while intoxicated, visited her duty station at night as plaintiff slept, pulled the covers off of her and stated he loved her, in 1998 or 1999, Kirk Dep. at 63-64, 226; put a co-worker's bra on his head, while intoxicated, in front of plaintiff in a hotel room in May 2001, Kirk Dep. at 126-141; and grabbed plaintiff's shirt and looked underneath it while at a EMS station in summer or fall 2001, Kirk Dep. at 223.

contributed to the hostile work environment, the continuing violation theory can apply to revive the untimely allegations.

>    b.    **Faragher/Ellerth** Defense

Defendant maintains it can establish the second prong of the Faragher/Ellerth affirmative defense; i.e., "that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." Talamentes v. Berkeley County School Dist., 340 F. Supp. 2d 684, 697 (D.S.C. 2004) (Norton, J.).[7] Plaintiff's affidavit contends she told shift supervisor Phil Barry and training officer Lance Hurd of the harassment. Defendant argues plaintiff's notes and deposition testimony undermine her affidavit claims that she reported the harassment to superiors. The three recollections are not so inconsistent as to strike the affidavit. For example, plaintiff's notes of her conversation with Barry recount they discussed co-worker Christine Carter.[8] The notes do not preclude the possibility that Herndon's conduct was discussed. More importantly, plaintiff has produced an affidavit by a former co-worker (Chris Esdorn) who recalls being present when plaintiff complained to Barry of Herndon's conduct. Barry denies having such a conversation with plaintiff, creating another issue of fact to be determined by the jury.

Plaintiff's recollections of her conversation with Hurd are not manifestly contradictory. Plaintiff's affidavit elaborates on the conversation with Hurd, which is

---

[7] Plaintiff does not contest the first prong, which addresses the prevention and prompt resolution of harassing behavior. See Pl.'s Mot. in Opp'n to Summ. J. at 7.

[8] During plaintiff's deposition, she did not specifically recall the conversation when asked what else Barry might know relating to the lawsuit. This omission is relevant to plaintiff's credibility but insufficient to label the Kirk affidavit a sham.

only generally described in the notes.[9]  Viewing the evidence in the light most favorable

to plaintiff, the two versions apparently depict different aspects of the same encounter.

The notes recall plaintiff alluding to sexual harassment problems at EMS, at which point

Hurd asked plaintiff to close the door so they could presumably discuss them further.

The affidavit describes the conversation that took place after plaintiff closed the door.

Any inconsistency between the two is insufficient to strike the affidavit.  Rather, the lack

of detail in the contemporaneous notes goes to credibility and weight of this evidence.

        Plaintiff's evidence of her conversations with Berry and Hurd is sufficient to

defeat the Faragher/Ellerth affirmative defense. The court need not address the evidence

of plaintiff's other alleged discussions with her supervisors.  Viewing the various

recollections in the light most favorable to the nonmoving party, sufficient evidence

exists to suggest that plaintiff attempted to alert her employer of the alleged behavior.

Summary judgment via the Faragher/Ellerth defense is improper.  However, plaintiff's

varied recollections of important aspects of her claim will be of significant interest to the

trier of fact.  It will be interesting to see how the jury reconciles plaintiff's varying

accounts vis-a-vis her request that they award her money damages.

        c.        **Failure to Promote**

        Defendant contends plaintiff cannot establish two of the four elements of a prima

facia case of failure to promote; specifically, that there was a specific position for which

plaintiff applied, and that defendant rejected plaintiff's application under circumstances

that give rise to an inference of discrimination.  See Williams v. Giant Food, 370 F.3d

---

        [9] Plaintiff does not discuss the detailed conversation in her deposition.  The
omission is relevant to credibility but insufficient to label the Kirk affidavit a sham.

423, 430 (4th Cir. 2004). Plaintiff does not address the argument in her reply brief and conceded the argument in court.

**IV.** **CONCLUSION**

For the reasons stated above, it is therefore **ORDERED** that defendant's motion for summary judgment is **GRANTED**, as to the failure to promote claim, and **DENIED**, as to the sexual harassment claim.[10]

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 11, 2005**
**Charleston, South Carolina**

---

[10] Plaintiff has also filed a motion to strike defendant's reply memorandum, and the accompanying affidavits, as untimely. Alternatively, plaintiff seeks to depose the two subjects of the reply memorandum's affidavits. Defendant's reply memorandum was apparently both a reply to plaintiff's response to the summary judgment motion and a response to the court's request for briefs on Waiters v. Bosch Corp., 683 F.2d 89 (4th Cir. 1982). The court permitted plaintiff to file a surreply. As such, plaintiff has addressed the issues raised in the disputed reply memorandum, and the court finds no need to strike the reply or the affidavits.

Defendant's motion for leave to file excess pages in its reply memorandum is rendered moot.